WO

SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Tomas Fraire, | No. CV 14-02520-PHX-GMS (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

Plaintiff Jose Tomas Fraire, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Maricopa County Sheriff's Office (MCSO) Detention Officers McKinney, Lopez, Poor, and Damato (collectively, "Defendants") move for summary judgment. (Doc. 62). Plaintiff opposes the Motion. (Doc. 69.)

The Court will grant the Motion for Summary Judgment in part and deny it in part.

**I.  Background**

In his Third Amended Complaint, Plaintiff claims that, while he was confined at the Maricopa County Fourth Avenue Jail, Defendants used excessive force against him in violation of his Fourth and/or Fourteenth Amendment rights. (Doc. 37 ¶ 22.)

Plaintiff's claims stem from an incident on October 22, 2014, in which he alleges Defendants attempted to relocate him to a different cell and, when they arrived at that cell, insisted he would have to occupy the top bunk, even though Plaintiff explained to them that he has a lower-bunk order for medical reasons. (*Id.* ¶¶ 7-9.) Plaintiff refused

to enter the cell because he did not want to risk injury from having to sleep on a top bunk, and Defendants allegedly ignored Plaintiff's explanation and told him they would penalize him by taking him to "the hole." (*Id.* ¶¶ 10-12.)  Defendant McKinney then placed Plaintiff in handcuffs and began to escort him away. (*Id.* ¶ 13.)[1]  Plaintiff alleges that as McKinney walked beside Plaintiff, he "forcefully threw Plaintiff to the floor" and the other Defendants "jumped on top of Plaintiff and forcefully accosted him." (*Id.* ¶ 14.)  According to his allegations, Plaintiff did not resist being handcuffed and escorted away, and he did not do anything to indicate he would become combative or endanger anyone prior to the takedown. (*Id.* ¶ 15.)  Plaintiff seeks damages for physical injuries and impairments, pain and suffering, and mental and emotional anguish that he alleges he suffered as a result of this incident. (*Id.* ¶ 22.)

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*,

---

[1] As shown in the fact section below, the evidence shows that Defendant Poor was the one who handcuffed Plaintiff and led him away.

*Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.  Facts[2]

The parties present conflicting versions of the facts; as stated, for purposes of summary judgement, the Court must take Plaintiff's version of events as true wherever there is a genuine factual dispute, and it must draw all reasonable inferences in Plaintiff's favor. *See Anderson*, 477 U.S. at 255.

At the relevant time in this action, Plaintiff was an inmate of the Maricopa County Fourth Avenue Jail (hereinafter "the Jail"). (Doc. 63 (Defs.' Statement of Facts) ¶ 1; Doc. 37 ¶ 5.) Inmates at the Jail are regularly moved to different cells in order to break up racial tensions and for other issues such as gang affiliations. (Doc. 63 ¶ 2; Doc. 63-1 at 9:11-22 (Poor Dep.).)[3][4] On October 22, 2014, Defendant Poor and other detention

---

[2] The relevant facts are drawn from Defendants' Separate Statement of Facts (Doc. 63) and attached exhibits (Doc. 63-1), Plaintiff's Statement of Facts and Summary of Disputed Facts (Doc. 70) and attached exhibits (Docs. 70-1, -2, -3, -4, -5), and a DVD submitted by Defendants which shows the purported excessive use of force incident from four different jail security cameras.

[3] Unless otherwise specified, all of the Court's citations refer to the automatically generated page numbers of the Court's electronic filing system (CM/ECF), which can be

officers randomly moved Plaintiff to a new cell. (Doc. 63 ¶ 3; Doc. 63-1 at 9:11.) Upon arriving at the new cell, Plaintiff refused the detention officers'[5] orders to enter it because he had a lower bunk pass and the cell already had an occupant on the lower bunk. (Doc. 63 ¶¶ 4-6; Doc. 70 (Pl. Statement of Facts) ¶¶ 2, 12; Doc. 63-1 at 45-47 (Pl. Dep.) 52:22-53:7, 54:17-19, 58:1-25.)

Video footage of this incident shows Plaintiff becoming visibly agitated. He drops his bag of belongings, waves his arms in front of the cell door, places his head in his hands, turns away from the cell, again waves his arms, and appears to engage in a heated verbal exchange with the two officers closest to the cell, although there is no audio on the video provided to the Court. (DVD, cameras 1 and 2, 8:26:04-16.) According to Defendants' facts, Defendants told Plaintiff he would be taken to security segregation for refusing to follow orders; Defendant Poor then handcuffed Plaintiff's wrists in front of Plaintiff, placed his own hands in an "escort hold" on Plaintiff's right wrist and arm and began escorting him away from the cell. (Doc. 63 ¶¶ 8, 10-11; Doc. 70 ¶ 3; Doc. 63-1 at

---

found at the top of each filed page.

[4] Defendants fail to comply fully with Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1, which requires that "[e]ach material fact in the separate statement [of facts] must . . . refer to a specific admissible portion of the record where the fact finds support." LRCiv 56.1(a). Specifically, although Defendants cite to the deposition testimony of Plaintiff and various detention officers, including those of Defendants, they place all of the depositions into a single continuous exhibit, which they generically refer to as "SOF," making it difficult for the Court quickly to locate or clearly to cite individual depositions. (*See*, *e.g.* Doc. 63 ¶¶ 2-13.) Defendants also fail to provide line numbers for the testimony that purportedly supports their facts, additionally adding to the Court's time in verifying these facts. (*See id.*)

Plaintiff's counsel also fails to comply, in part, with Local Rule of Civil Procedure 56.1(b). Specifically, instead of providing a controverting statement of facts that sets forth numbered paragraphs corresponding to each numbered paragraph in Defendants Separate Statement of Facts, indicating which of those facts are in dispute, counsel provides only a separately numbered, largely overlapping, Separate Statement of Facts, followed by a Summary of Disputed Facts, making it difficult for the Court readily to determine which facts are in dispute. (*See* Doc. 70.)

Counsels for both parties are reminded of their obligations to comply with all applicable Federal and Local Rules.

[5] It is not clear from Defendants' or Plaintiff's facts which detention offices were present and whether this included all Defendants.

- 4 -

1  11:10-11 (Poor Dep.).)  Plaintiff testifies, and the video evidence appears to confirm, that
2  Plaintiff did not physically resist being handcuffed or led away.  (Doc. 70 ¶ 3; DVD,
3  camera 2 at 8:26:10-26.)  A detention officer who later handled Plaintiff's administrative
4  grievance of the incident states, however, that Plaintiff told him he (Plaintiff) "was
5  aggressive and agitated" with the officer escorting him.  (Doc. 63-1 at 6 (Mikel Aff.).)

6  Plaintiff testifies, and the video evidence shows, that, after escorting Plaintiff
7  several yards from the cell, Poor (who can be seen walking to the right and slightly to the
8  back of Plaintiff) suddenly places his left foot in front of Plaintiff's right foot and yanks
9  down on Plaintiff's right arm, throwing Plaintiff down to the floor.  (Doc. 70 ¶ 4, *See*
10  DVD, cameras 1 and 2 at 8:26:29.)  According to Poor, he did so because he could feel
11  Plaintiff tense up his upper and lower arm and pull it in a "fast motion" forward and away
12  from Poor.  (Doc. 63 ¶ 12, Doc. 63-1 at 11:11-13, 19-20.)  Plaintiff testifies that he did
13  not tense his muscles, pull away, or do anything else to provoke Poor's sudden use of
14  force against him.  (Doc. 70 ¶ 5, Doc. 70-2 at 5 (Pl. Dep.) 74:11-16, 75:15-19.)  It is not
15  clear from the video evidence that Plaintiff made any of the movements Poor describes.

16  After Poor took Plaintiff down, the video shows four other officers walking
17  forward and quickly surrounding Plaintiff on the floor.  (DVD, cameras 1, 4 at 8:26:33.)
18  One officer grabs Plaintiff's legs, which appear to have flown up as Plaintiff rolled onto
19  his back on the floor, two other officers assist in restraining Plaintiff on the floor, and a
20  fourth officer stands or walks around behind the others, turning at one point to motion for
21  the inmate in the doorway of the still-open cell to get back inside.  (*Id.*, cameras 1, 2, 3, 4
22  at 8:26:33-8:27:00.)  Because the officers kneeling on the floor completely surround
23  Plaintiff and the cameras show only their backs, it is impossible to see the degree to
24  which Plaintiff is moving or struggling or what the officers are doing with their hands
25  and arms as they continue to huddle around him.  During this time, additional officers
26  arrive on the scene, and two of them retrieve Plaintiff's belongings and close and lock the
27  open cell door.  (*Id.* at 8:27:02-50.)  About two minutes after the takedown, the officers
28

on the floor raise Plaintiff up, turn him toward the exit, and resume walking him away. (*Id.* at 8:28:30.)

Plaintiff claims to have suffered physical injuries and impairments as well as pain and suffering from this incident. (Doc. 37 ¶ 22.) In his deposition, it is unclear which of Plaintiff's asserted physical impairments pre-existed the incident. Plaintiff appears to claim that the takedown caused his rotator cuff to tear and exacerbated preexisting lower back and shoulder injuries. (Doc. 70-2 at 3 (Pl. Dep.) p. 31:2-32:25.)

## IV. Defendants' Motion

Defendants argue that they are entitled to summary judgment because the facts surrounding Plaintiff's takedown, as captured by the Jail's security cameras, show they did not use excessive force as a matter of law, Plaintiff cannot show he was injured as a result of the takedown, and Defendants are, in any case, entitled to qualified immunity. (Doc. 62 at 1.)

Plaintiff concedes in his Response that Defendants McKinney, Lopez, and Damato did not use excessive force against him and should be dismissed. (Doc. 69 at 1.) The Court will therefore grant Defendants' Motion for Summary Judgment as to these Defendants. Plaintiff opposes the Motion as to Defendant Poor. (*Id.*)

### A. Legal Standard

The Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, applies to the use of excessive force against pretrial detainees. *Kingsley v. Hendrickson*, ___ U.S.___, ___, 135 S. Ct. 2466, 2473 (2015); *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). In this context, force is considered excessive if the officers' use of force was "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state. *Kingsley*, 135 S. Ct. at 2472-73; *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an investigatory stop). In determining whether the use of force was reasonable, the Court should consider factors including, but not limited to

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.

Because officers are often forced to make split-second decisions in rapidly evolving situations, the reasonableness of a particular use of force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 2473-74 (citing *Graham*, 490 U.S. at 396). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Constitution. *Graham*, 490 U.S. at 396 (citation omitted).

**B.    Poor's Use of Force**

Defendants rely primarily on the video footage described in the fact section above to argue that the evidence clearly shows that Defendant Poor acted reasonably to neutralize a threat posed by Plaintiff when he took Plaintiff to the ground. (Doc. 62 at 11-13.) In support, Defendants rely on *Dunn v. Marshall*, 549 F.3d 348 (5th Cir. 2008),[6] and *Scott v. Harris*, 550 U.S. 372 (2007), to argue that, for purposes of assessing the relevant facts and granting summary judgment, the video evidence controls. (*Id.*)

Defendants' arguments are unavailing. First, neither *Dunn* nor *Scott* held, as Defendants appear to suggest, that a video recording of contested events is *per se* dispositive and always outweighs a plaintiff's own testimony of relevant facts. But even if these cases lend support to Defendants' position that "the video alone can be deemed the final arbiter" of the facts (Doc. 62 at 12), the video evidence in this action does not compel the Court to reach the same conclusions reached in *Dunn* and *Scott*.

In *Dunn*, the plaintiff conceded that a police camera recording of his arrest following a vehicular pursuit accurately depicted the relevant facts, and the court merely

---

[6] Defendants erroneously cite *Dunn* as a Ninth Circuit case. (Doc. 62 at 12.)

1   concluded on summary judgment that these facts, taken in a light most favorable to the
2   plaintiff, showed that the officers' use of force was objectively reasonable as a matter of
3   law.  549 F.3d at 354.  This finding has no relevance here where Plaintiff does not
4   concede to Defendants' version of the facts, and, even taking the video evidence into
5   account, Plaintiff's testimony raises genuine issues of material fact as to whether he
6   resisted Poor's control prior to being forcibly thrown to the floor.  *See McLauglin v. Lui*,
7   849 F.2d 1205, 1208 (9th Cir. 1988) (the nonmoving party's sworn statements on a
8   central fact in dispute are direct evidence entitled to belief on summary judgment).

9   *Scott* also does not help Defendants.  Like *Dunn*, *Scott* involved a vehicular
10  pursuit and forcible seizure captured on police video, but, unlike *Dunn*, the plaintiff in
11  *Scott* disputed the factual bases for the officers' use of force and presented a wholly
12  different version of the preceding high speed chase from that depicted in the video.  550
13  U.S. at 379-81.  Based on its review of the video, the Supreme Court found that the
14  plaintiff's vehicular flight "posed a substantial and immediate risk of serious physical
15  injury to others," justifying the officers' use of potentially deadly force to stop him.  *Id.* at
16  386.  As relevant to Defendants' arguments, the Court reasoned that "[w]hen opposing
17  parties tell two different stories, one of which is *blatantly contradicted by the record, so*
18  *that no reasonable jury could believe it*, a court should not adopt that version of the facts
19  for purposes of ruling on a motion for summary judgment."  *Scott*, 550 U.S. at 380
20  (emphasis added).  A similar conclusion is not warranted in this action, however, where
21  Plaintiff's material contentions surrounding his takedown—namely, that he did not resist
22  being handcuffed or try to pull away from Poor in any way—are not "blatantly
23  contradicted" by the evidence such that "no reasonable jury could believe" his testimony.

24  In reaching this conclusion, the Court has viewed the video footage from all four
25  security cameras, including cameras 1 and 4, which most clearly show the movements of
26  Defendants and Plaintiff, from the moment Poor handcuffs Plaintiff and starts to escort
27  him away from the cell through the actual takedown.  The Court has slowed and
28  repeatedly stopped playback to examine in micro-second intervals the 1-2 seconds prior

1  to and including the moment Poor pulls down on Plaintiff's right arm while, at the same
2  time, placing his left leg in front of Plaintiff's right leg, effectively tripping and throwing
3  Plaintiff forward to the floor.  Based on careful review of this evidence, the Court finds
4  that the video footage is simply not dispositive as to whether, as Poor testifies, Plaintiff
5  prompted this use of force by tensing his muscles and trying to pull away from Poor, or
6  whether, as Plaintiff testifies, the takedown at that moment was effectively unprovoked.

7  Defendants appear to argue more broadly that clear contradictions between the video footage and some of Plaintiff's sworn statements regarding *other* alleged actions show that Plaintiff's testimony lacks credibility and should be rejected. (Doc. 62 at 11-12.)  As Defendants point out, Plaintiff previously alleged in his Second Amended Complaint that Poor placed him in a head lock when he threw him to the floor and that the other officers came around and began kicking, hitting, and stomping on Plaintiff, while the video footage shows none of these things. (*Id.*, *see* Doc. 17 at 5.)  Defendants suggest that Plaintiff's apparent lack of credibility as to these alleged actions defeats all of his assertions. (Doc. 62 at 11-12.)  As such, they effectively ask the Court to make a credibility determination to rule out *all* of Plaintiff's allegations—even those not "blatantly contradicted by the record."  To do so, however, would misconstrue the Supreme Court's reasoning in *Scott*, which rejected on summary judgment only testimony it found so blatantly contradicted by the video evidence that no reasonable jury could believe it, and it would require making credibility determinations to resolve what are otherwise genuine factual disputes.  This, the Court is not permitted to do. "Credibility determinations . . . are jury functions." *Anderson*, 477 U.S. at 255.

Defendants do not argue that, when taking Plaintiff's version of the genuinely disputed facts as true, Poor's takedown of Plaintiff was objectively reasonable as a matter of law.  But assuming, as the Court must, that Plaintiff made no movement to pull away or resist Poor's hold on his arm prior to this use force, the Court must nonetheless determine whether throwing Plaintiff to the ground was objectively reasonable under the circumstances.  *See Kingsley*, 135 S. Ct. at 2473.

Plaintiff argues that this analysis begins and ends with consideration of the first *Kingsley* factor, the relationship between the force used and the need for force. (Doc. 69 at 4.). This is because, Plaintiff contends, there was absolutely no need for Poor to use any force while Plaintiff walked compliantly beside him, making any amount of force at that moment—including a sudden takedown to the floor—unnecessary and unreasonable. (Doc. 69 at 4-5.) As noted, Plaintiff testifies that he did nothing to resist Poor's escort and control, and the video evidence upon which Defendants rely does not show otherwise. At most, this evidence is inconclusive as to whether Plaintiff flexed his arm muscles or pulled away from Poor in any measureable way, and, despite Defendants' arguments, the video does not prove Poor's assertions or present a scenario akin to *Scott* in which "no reasonable jury could believe" Plaintiff's testimony.

The statements of the other officers that Defendants include in their Motion and point to in their Reply do not compel a different conclusion. (*See* Doc. 62 at 6-9, Doc. 71 at 6.) At deposition, Defendant Damato testified that he was behind Plaintiff at the time of the escort and he saw Plaintiff's right shoulder move back suddenly and his elbow come up (Doc. 63-1 at 34:23-25, 35:1-11); Defendant Lopez testified that he saw Plaintiff turn his head to the right (toward Poor) and do "a slight pulling away with his shoulder and his arm" (*id.* at 39:3-7); Defendant McKinney testified that he saw Plaintiff "attempt[ing] to pull away from the officer's control[,] kind of jerking his body, thrashing his body . . . [t]urning away from the officer [and] escaping his control" (*id.* at 22:10-16.); and Officer Braatan testified that he saw Plaintiff tensing or flexing his muscles with "[k]ind of a slight jolt," and attempting to lift up his hands. (*Id.* at 30:2-10) But these statements, themselves, appear to conflict with, or, at the very least, are unsupported by, the video evidence discussed in detail above. Moreover, the addition of these officers' testimony does nothing to change the Court's analysis on summary judgement where Plaintiff's own testimony, taken as true, is that he did nothing to resist Poor to provoke the sudden takedown. At the very least, Plaintiff's testimony creates a

genuine issue of material fact as to whether any additional use of force was required at that time.

By the same token, the Court cannot conclude that Poor was forced to make a split-second decision in a rapidly evolving situation, such that his takedown of Plaintiff, even if unnecessary in hindsight, was objectively reasonable under the circumstances. *See Kingsley*, 135 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 396). Apart from Plaintiff's initial agitation and refusal to move into a designated cell as ordered, the evidence is disputed as to whether, once Plaintiff was handcuffed and being escorted away, any further use of force was required. Again, taking Plaintiff's facts as true and drawing all inferences in his favor, Plaintiff did not offer any further resistance that would have required a split-second response. Likewise, "the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" are subject to genuine factual disputes, as is whether the amount of force Poor applied was reasonable under the circumstances. (*See id.*) In short, genuine factual disputes preclude the Court from finding that Poor's use of force in throwing Plaintiff to the floor was objectively reasonable as a matter of law.

### C. Lack of Injury

Defendants also argue that Plaintiff's excessive use of force claim fails because he does not produce evidence that he was physically injured as a result of this incident, as required for damages under Section 1983. (Doc. 62 at 16.) The Court does not agree. As previously noted, Plaintiff alleges both physical and emotional injuries in the Third Amended Complaint, and he testifies in his deposition that this incident either caused or exacerbated his rotator cuff injury and exacerbated his prior lower back and shoulder injuries. This testimony is sufficient to raise a genuine issue of material fact that Poor's actions resulted in at least some physical injury to Plaintiff. *See S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (declarant has personal knowledge of her own symptoms). Moreover, even if Plaintiff's injuries were minor, this would not defeat his constitutional claim. *See Bryan*

1 *v. MacPherson*, 630 F.3d 805, 824-825 (9th Cir. 2010) (force can still be found unreasonable even without causing injury); *cf. Hudson v. McMillian*, 503 U.S. 9-10 (1992) (finding in the Eighth Amendment context that a lack of significant injury is not a sufficient basis on its own for dismissal of an excessive use of force claim).

### D. Qualified Immunity

Defendants argue that even if Poor is found to have used excessive force, he is entitled to summary judgment on qualified immunity grounds. (Doc. 62 at 17-19.) Government officials in § 1983 actions are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, however, the applicable legal standards are clearly established in *Kingsely*, which requires that any use of force against pretrial detainees be objectively reasonable in light of a number of factors, including "the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." 135 S. Ct. at 2473. Because genuine issues of material fact preclude the Court from finding that Plaintiff was actively resisting Poor's control at the time Poor forcibly threw him to the floor or that Poor could have otherwise reasonably perceived any threat from Plaintiff that would have justified this kind of response, the Court cannot find that Poor is entitled to qualified immunity.

For all the reasons herein discussed, the Court will deny Defendants' Motion for Summary Judgment as to Defendant Poor.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 62).

(2) Defendants' Motion for Summary Judgment (Doc. 62) is **granted in par**t as to Defendants McKinney, Lopez, and Damato and **denied in part** as to Defendant Poor.

. . . .

(3)     The remaining claim is Count One against Defendant Poor.

Dated this 6th day of February, 2017.

_____
Honorable G. Murray Snow
United States District Judge

- 13 -